## SOLLIDAY v. GRUVER.

Devise that devisee, *his heirs or assigns*, shall pay certain legacies, creates a charge, and if the devisee die before testator, and there be no devise over, so that the land descends, it may be sold under decree of the Orphans' Court for payment of the legacies.

And such sale should be subject to annual charges of legatee for life, and to legacies payable in future.

Testator devised his lands to his two sons, their heirs and assigns, and also devised the use of part of a house and garden to his widow for life. He further directed that his two sons, their heirs and assigns, should deliver her certain articles yearly, and an annual sum of money. He then directed his two sons should pay his daughter H. a certain sum of money; and that they, *or their heirs or assigns*, should, after his wife's death, pay H. a further sum, which with that already paid should be equal to $3000. One of the sons died before the testator. On petition of the husband of H. the court directed a sale by the administrator of the land devised to the deceased son, to be made subject to the widow's interest under the will, and to the future legacies to the daughter, for the purpose of paying one-half of the legacy presently due; and their order was affirmed.

APPEAL from the Orphans' Court of Bucks.

*March* 27. J. Gruver made his will in 1838, whereby he devised to his wife the use of part of his house where he then resided, or of that devised to his son William, with a garden, &c. He also directed his two sons, Isaac and William, in common, to furnish her with firewood and certain quantities of hay, corn, beef, pork, &c., "to be delivered by my two sons, their heirs and assigns, annually." He then devised part of his farm, including the mansion-house, to his son Isaac, his heirs and assigns for ever : also, a lot in Northampton county. To his son William, his heirs and assigns for ever, he devised the residue of his farm, and another lot in the same county. The will then continued : "They, the said Isaac and William, shall pay unto my two daughters, or to their heirs and assigns ;" to Hannah, wife of appellant, a sum equal to the value of a lot given to his daughter Susan, which was directed to be appraised ; "and the said Isaac and William shall take the same (the land above devised to them) in possession one year after my death, and shall pay unto my wife $100 yearly," or an additional sum if necessary on account of infirmity ; "and after the decease of my wife, the said Isaac and William, or their heirs and assigns, shall pay to my two daughters, or to their heirs or assigns, a further sum, until it shall amount to $3000, including the land and money already given, in four equal annual payments, the first thereof one year after the decease of my wife." The residue "of his effects" he devised to his two sons equally. Isaac died before his father, unmarried and without issue.

The widow of testator administered, and the land given to Sarah was appraised as directed by the will. Solliday, in right of his wife Hannah, one of the legatees, presented a petition setting forth these facts, and praying an order for payment of the amount presently due to his wife out of the real estate after notice to the executor, and devisees of the real estate charged with payment. Notice was accordingly served on all the heirs of testator and upon his administratrix.

In making the decree, his honour, KRAUSE, P. J., said :—"The devise to Isaac lapsed by his death in the life of his father; but there being no residuary devisee, the question suggested as to the operation of the act of 1833, passing real estate by will, which has been acquired after the date of the instrument, needs not here be discussed. The testator's heirs take the land at all events; but they take it subject to the provision in favour of the widow and daughters. The duty of satisfying them is imposed on the devisees and their assigns, as well as the heirs; consequently it accompanies the land, whether it passes from them to others by sale or descent, and thus the intention to make it the chief security for satisfaction of the legacies is clearly expressed. This being so, has the lapse the effect of disappointing this intention? It is possible that such might be the result of the law. Under our intestate act the land might be treated as having fallen out of the will into a naked intestacy, and discharged therefore from any testamentary direction. In equity, however, the hold of the will on the land to enforce the obligations fastened on it, is maintained; and that rule was adopted by the Orphans' Court of Philadelphia, in the case of Eleanor Newell's will, 1 P. A. Bro. 311, dated in 1807, and made operative in 1809 by her death. She devised real and personal estate to her son D., his heirs, &c., he to pay to another son, then from home, a certain sum. D. died in her lifetime, and it was ruled that the land descended to his issue subject to the sum given to the absent legatee. And that case is fortified by similar decisions in the English Chancery; being, as introduced by Roper, vol. 1, p. 474, a class of excepted cases out of the general rule in regard to lapses. Thus in Wigg *v.* Wigg, 1 Atk. 382, the devise was of real estate to the testator's son, on condition that he or his heirs pay £90 to grandchildren in equal shares, with a clause of entry or distress. The son died before the devisor; still the charge of that sum was held to subsist on the land, and Lord Hardwicke ordered it to be sold to raise the money, adding, that a man might make an equitable as well as a

. legal charge on his land, and chancery would maintain it against the heir; and saying, also, that the heir shall enter for breach of the condition, and in that court be trustee for the legatee. So in Oke v. Heath, cited by Roper, vol. 1, p. 495, from 1 Ves., sen. 135, where Mrs. Smith, empowered to appoint £4000 by deed or will, gave that sum to her nephew by will, he to pay an annuity for life out of it to his mother. The nephew dying before the testatrix, Lord Hardwicke also ruled that so much of the fund as went to him beneficially had lapsed, but not so the annuity granted out of it to the mother. Whether, therefore, the lapsed estate be real or personal, it is equally held in equity to the duty of satisfying the portion directed to be paid out of it by the testator's will. And with these two examples, one of real and the other of personal property, the dictum in Downer v. Downer, 9 Watts, 62, that a recovery by the heirs is not for their exclusive benefit divested of the lien of the money ordered to be paid by the testator to his widow and daughters, is in unison—all of them co-operative to establish the case of Eleanor Newell's will as one resting on recognised authority; especially as the date of the will and death of the testatrix make it stand independent of the act of 1810, relative to lapsed legacies and devisees. The provision of this will in favour of the testator's widow and daughters must therefore be made available to them out of the land devised to Isaac and William, by the Orphans' Court, under the 57th section of the act of 24th February, 1834, and as indicated in Craven v. Bleakney, 9 Watts, 19, and Downer v. Downer, by an exercise of its chancery jurisdiction. Having the powers of such jurisdiction, its decrees may be enforced for compelling payment of the daughters' legacy, or specific execution in favour of the widow, as well by sale of the land as by attachment and sequestration. Here the widow has not applied for its interposition in her behalf, but her interests must necessarily be protected."

The court decreed one-half of the legacy presently payable to petitioner's wife to be due, and directed a sale by the administratrix of the land in Bucks county devised to Isaac, subject to the annual provisions for the widow in money or otherwise, and subject to one-half of the legacy of $3000 due the two daughters of testator, on the death of the widow, as directed by the will.

This sale was made and confirmed, and this appeal taken by the petitioner below, who assigned for error:—the sale subject to the annual provisions for the widow, and the legacies to the daughters; that the estate lapsed and descended discharged of the encumbrances.

*Dubois*, for appellant.—If the legacy was not charged on the land it could not be sold under this decree; but the devise lapsed and the land descended under the intestate law. There are no words creating a charge, but a mere direction that the devisees shall pay: 3 Watts & Serg. 370; 7 Watts & Serg. 407; Brant's Appeal, 8 Watts, 202.

*Ross*, contrà.—A legacy payable by a devisee is not affected by the death of the devisee before testator, unless there be a limitation over: 3 Atk. 572; 2 Cox, 121; 1 Rop. Leg. 413.

To determine the intent to charge the estate, the situation of the parties must be looked at, and the words of the will. The devisee, his *heirs or assigns*, are to pay, *i. e.* it is to run with the land; and this is essential, for the executor is not to pay, nor has he the funds. To what, then, must we look, unless to the land, where there is no devisee under the will who is personally liable? It is plain, then, both from the words of the will and the situation of the parties, that the land was to be a fund for paying legacies: Tower's Appr., 9 Watts & Serg. 103; Kelsy *v.* Doe, 3 Cow. 133, 6 Cow. 333; Bank *v.* Donaldson, 7 Watts & Serg. 407; Oke *v.* Heath, 1 Ves. 141; 1 P. A. Bro. 311; Downer *v.* Downer, 9 Watts, 62.

PER CURIAM.—Let the decree be affirmed for the reason given by the president of the court below.