## Appeal of Elizabeth Truby, Exrx., et al.

### Jacob Hill's Estate.

Where an annuity of a widow is, by the decree of the court, under the provisions of a will, made a fixed charge upon land during her life, a sheriff's sale under that decree cannot divest such charge.

(Argued October 13, 1887. Decided October 31, 1887.)

October Term, 1887, No. 202, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Appeal from a decree of the Orphans' Court of Armstrong County fixing the pecuniary value of a legacy charged upon real estate, and awarding a fieri facias against the land subject to the charge. Affirmed.

The facts of the case appear in the following abstract of petition:

"On July 25, 1876, Jacob Hill died testate, leaving a widow, Hannah Hill, the petitioner, and eight children, and being seised of considerable real estate.

"He devised to his son, Jno. W. Hill, a farm in Allegheny township, Armstrong county, containing 174 acres, and to his son, Winchester Hill, a farm of about 200 acres, being the old homestead. The remainder, about 100 acres, was devised to his oldest daughter if she desired it, if not, the next oldest,—until all his children should have an opportunity of refusal, unless taken before descending through all of them.

"These several tracts of land were to be appraised by six men chosen by his children, and the devisees were to take them at the appraisement. The one-third part of the appraised value of the land, under said will, was set apart; and the interest thereon entirely at the disposal of his wife, Hannah Hill, during her

NOTE.—It will be noticed the execution ordered by the orphans' court in this case was not under the provisions of the act of February 23, 1853, relating to the disencumbering of a testator's real estate, where legacies or annuities are charged thereon, by the setting aside of sufficient personal property to meet the annuities and charges.

life, and payment of the same to be made in such manner as she desired at her death. The remaining two thirds was bequeathed to all of decedent's children equally. Under said will, also, the widow was entitled to a sufficient quantity of the several kinds of fruit growing on the two plantations, horse and buggy, pasture and feed to be furnished to her from the products of the decedent's two plantations free of charge. The petitioner elected to take under said will. The children of decedent failing to agree as to appraisers, the orphans' court June 4, 1877, appointed the sheriff of Armstrong county and six appraisers to appraise said real estate under said will.

"The farm devised to Winchester Hill was appraised at $9,069 and designated as allotment No. 1; that devised to Jno. W. Hill appraised at $5,730.60, and designated as allotment No. 2; the remaining tract of about 100 acres appraised at $3,-972.42, and designated as allotment No. 3.

"The said appraisements being approved by the orphans' court and rule to accept or refuse having been served on the heirs, Jno. W. Hill, December 3, 1877, appeared and accepted allotment No. 2 at the appraisement, and October 6, 1881, the said court decreed that the said John W. Hill should presently pay the other heirs their proportional parts of two thirds of the appraised value of said allotment, to wit, the sum of $3,820.43, with interest thereon from December 3, 1877. The remainder, to wit, $1,910.22, to be and remain charged upon said purpart, and legal interest thereon from December 3, 1877, to be annually paid by said Jno. W. Hill, his heirs and assigns, to said Hannah Hill, during her natural life (but all arrearages of said interest to be paid on or prior to October 10, 1881), to be recovered by said Hannah Hill by distress, etc., and upon her death the said principal sum of $1,910.22 to be paid by said Jno. W. Hill, his heirs and assigns, holding said premises to the persons then thereunto legally entitled.

"Jno. W. Hill having failed to comply with said order, the orphans' court, March 1, 1883, awarded a fi. fa., and the sheriff of Armstrong county levied upon allotment No. 2, and sold the same at public sale, June 2, 1883, to John Gilpin, Esq., for $4,501, and John Gilpin and wife, June 7, 1883, conveyed the same to Simon Truby, who died on May 19, 1886, seised of said premises, leaving a widow and eight children.

"Since the sheriff's sale the widow, Hannah Hill, has not been

furnished from allotment No. 2 pasture, feed, fruit, etc.; neither
has the said Simon Truby, or his heirs, paid to her the interest
on the one third of the appraised value of said allotment.

"The petitioner prays that the annual pecuniary value of said
pasture, etc., charged upon allotment No. 2 be ascertained, and
that a fi. fa be awarded to collect the same, and also to collect
the interest on one third of the appraised value of said allot-
ment."

February 8, 1887, the court awarded a citation on the widow
and heirs of Simon Truby, deceased, to show cause why the
prayer of the petitioner should not be granted.

The respondents demurred to the petition.

After argument, the following opinion and decree were ren-
dered by the court below, MEHARD, P. J.:

"If the main question raised by the pleadings in this case
had not been discussed by the learned auditor appointed to dis-
tribute the fund arising in the estate of Jacob Hill, deceased,
out of the land which this controversy concerns, and had it not
been disposed of by the court on exceptions filed to the auditor's
report on behalf of the respondents and others, the able argu-
ments of respondents' counsel would call for a full examination
in this opinion. But in view of what has there been said and
decided, a few words only are necessary here.

"John W. Hill's allotment of his father's real estate, which
respondents' ancestor bought, was not sold under act of April
18, 1853, Purdon's Digest, 1457. The provisions of that act
do not, therefore, apply to the fund created by the sale. The
lien of the fund charged on Jno. W. Hill's land by the will of
his father, for the support (or annuity) of petitioner, was para-
mount to the title of John W. Hill; hence, petitioner need not
and cannot resort to this fund by virtue of act of February 24,
1834. McCredy's Appeal, 47 Pa. 442.

"By the decree of this court, under which this land was sold,
that fund was to be and remain a charge on the land during the
natural life of Hannah Hill. It would, therefore, not be di-
vested by the sale. Solliday v. Gruver, 7 Pa. 452.

"This case cannot be distinguished from Cowden's Estate, 1
Pa. St. 267, 284; Steele's Appeal, 47 Pa. 437; Wertz's Appeal,
65 Pa. 306, and kindred cases.

"That petitioner has chosen the proper forum is sufficiently shown by Mohler's Appeal, 8 Pa. 26; Gibson's Appeal, 25 Pa. 191."

On July 2, 1887, a decree was made "that the proportionate part of the charge set forth in plaintiffs' bill, to be paid by purpart or allotment No. 2 of Jacob Hill's estate, is of the annual money value of $25, and therefore that amount owing plaintiff, on that account, by the heirs of Simon Truby, deceased, as named in the bill, due June 2, 1887, is $100; and that the amount due and owing to the plaintiff by said heirs of Simon Truby, deceased, on account of the interest accruing annually and payable to Hannah Hill, plaintiff, on the 3d day of December of each year on the one third of the appraised value of purpart No. 2 of Jacob Hill's estate charged thereon (to wit, $1,-910.22), is $469.20, which sum is made up of the payments ordered heretofore (i. e., by decree October 6, 1881) to be made annually, commencing April 1, 1883, and including that due December 3, 1886, with interest on each payment from the date it fell due; and that the said heirs of Simon Truby, deceased, pay the said sums, in all $569.20, together with the costs of this proceeding, or a fi. fa. shall issue after twenty-one days from this date, for the levying of the same from said purpart No. 2 of Jacob Hill's estate, as described in plaintiff's bill; and should a sale of said purpart be made in pursuance of this decree, it shall be made subject to the charges of which the sum herein decreed to be paid is the annual value now in arrears."

Thereupon, the respondents took their appeal by certiorari, specifying the following assignments of error:

1. The court erred in holding and deciding that the one third of the appraisement ($1,910.22) of allotment No. 2 (the interest of which was payable to the widow) was not divested by the sheriff's sale.

2. In making the decree of July 2, 1887.

3. In holding or decreeing that the heirs of Simon Truby, deceased, should pay the widow any interest or charge accruing during the lifetime of said Simon Truby.

*John F. Whitworth, W. D. Patton,* and *James S. Whitworth,* for appellants.—The main question in this case is whether the one third of the appraisement of allotment No. 2, accepted by

Jno. W. Hill (the interest of which was payable to the widow), was divested by the sheriff's sale.

The general rule is that legacies charged on real estate, like other liens, are divested by judicial sales, and for the evident reason that "policy requires that the title should be in the hands of the purchaser at judicial sales as unfettered and untrammeled as possible."

But a legacy, or other encumbrance, to be divested, must be "definite in its amount, certain in its application or capable of being made so." *Re* McKenzey, 3 Pa. St. 160.

It has been held that "a judicial sale of land divests it of the lien of a legacy payable in annual instalments, not due and payable at the time of the sale." Lobach's case, 6 Watts, 167. See also M'Lanahan v. Wyant, 1 Penr. & W. 96, 21 Am. Dec. 363, and Reed v. Reed, 1 Watts. & S. 235.

Under the will of Jacob Hill, the widow evidently takes more than a mere interest for life. A reasonable construction of the will gives her the interest and principal for life, with power to dispose of the same absolutely at her death; and this interpretation is sustained by the fact, also, that the testator disposes of only the remaining two thirds to his children. The interest and principal are one and inseparable, and this bequest is the same as though the widow had been bequeathed a sum certain.

It was held in Parker's Appeal, 61 Pa. 478, that "a bequest of a sum 'the interest of which is to be paid to her during life and the principal to her children at her death' is a direct bequest of the principal for life, and the legatee is entitled to receive it on securing interest of those in remainder according to 49th section of the act of February 24, 1834.

And so it has been repeatedly held that a bequest of interest for life is a bequest of the principal for life. 45 Pa 365; 4 Watts, 130.

It is evident that, under this will, Hannah Hill takes an amount certain and known at the time of the sheriff's sale, and, under the authorities, the fund set apart (*i. e.*, one third of appraised value) would be divested.

But cases similar to this have been decided by this court. Hellman v. Hellman, 4 Rawle, 440; Christman v. Christ, 4 Pennyp. 291.

The fund being divested, it should have been paid to the widow out of the proceeds of sale upon her giving security in the

orphans' court to secure the interest of the persons entitled in remainder. Act February 24, 1834, § 49; Parker's Appeal, 61 Pa. 478.

It is not easily seen how the cases cited by the learned court below are altogether applicable.

McCredy's Appeal, 47 Pa. 442, was where the devisee took the land on condition that he pay certain legacies. So was Solliday v. Gruver, 7 Pa. 452, and Cowden's Estate, 1 Pa. St. 267.

In these cases the testator expressly provides that the devisee takes the land subject to the interests of the legatee; and the legacies were not divested because the interests of the legatees were paramount to those of the devisees.

Such is not the case here. The widow receives a bequest of so much money. The desire of the testator, above everything else, seems to have been that his estate should descend to those of his own blood, and, if possible, those of his name. This was the paramount intention—everything else was subordinate. The rights of John W. Hill were paramount to those of the widow.

In Steele's Appeal, 47 Pa. 437, cited by the learned court below, the widow was to receive a sufficient maintenance during her life. This, of course, would not be divested, the value thereof being unknown at the time of the sale.

The remaining case, Wertz's Appeal, 65 Pa. 306, was a case of intestacy. The widow would take an estate in the land under the intestate laws. An estate is never divested.

There is yet another question. Granting that this fund was not divested, we think that the court erred in decreeing that the heirs of Simon Truby pay the petitioner the interest, etc., accruing prior to his death, it being a debt of the estate, and, as such, should be paid by the executors.

The act of February 24, 1834 (Purdon's Digest, p. 421), provides that "all debts owing by any person within this state, at the time of his decease, shall be paid by his executors or administrators so far as they have assets."

The personal estate is the primary fund for the payment of all debts, including liens on real estate. Mason's Appeal, 89 Pa. 402.

A recognizance given in partition in the orphans' court is payable by the administrator out of the personal estate. Kinter's Appeal, 62 Pa. 318.

*S. M. Crosby* and *J. M. Hunter,* for appellee.—"The intention of the testator drawn from the words of a will, taken altogether, must govern in its construction." Schott's Estate, 78 Pa. 42; Middlesworth v. Blackmore, 74 Pa. 418; Butz v. Butz, 2 Pennyp. 270.

Applying this doctrine of construction to the will under consideration, we gather the general intention of the testator with reference to this part of the provision he desired to make for his wife,—and that is, that she was to have absolute power and control only of the interest.

If this court should hold that the power of appointment does refer to the *corpus,* even that would not render it susceptible of being divested by the sheriff's sale. While the direction for investment saves it from vesting absolutely in the widow, it also preserves it for the remaindermen. Silknitter's Appeal, 45 Pa. 365, 84 Am. Dec. 494.

That only arrearages of the interest or annuity would be divested by the sheriff's sale, we cite: Lauman's Appeal, 8 Pa. 475; Mohler's Appeal, 5 Pa. 418, 47 Am. Dec. 413; Reed v. Reed, 1 Watts & S. 239; Zeigler's Appeal, 35 Pa. 173; Mather v. McMichael, 13 Pa. 302; Kline v. Bowman, 19 Pa. 24; and Shertzer v. Herr, 19 Pa. 34; Dickinson v. Beyer, 87 Pa. 274; Davison's Appeal, 95 Pa. 394; Luther v. Wagner, 107 Pa. 343; and Plumer's Appeal, 11 W. N. C. 144.

That the corpus upon which this dower annuity was based was not divested, we refer to the same cases and cite: Fisher v. Kean, 1 Watts, 259; Bear v. Whisler, 7 Watts, 144; and Mix v. Ackla, 7 Watts, 316; Mentzer v. Menor, 8 Watts, 296; Swar's Appeal, 1 Pa. St. 92; Vandever v. Baker, 13 Pa. 121; Dewalt's Appeal, 20 Pa. 236; Wertz's Appeal, 65 Pa. 306; and Luther v. Wagner, 107 Pa. 343.

PER CURIAM:

The case of Solliday v. Gruver, 7 Pa. 452, would seem to settle the point in controversy in this case. The annuity of the widow, by virtue of the previous decree of the court, was made a fixed charge upon the land during her life; hence, as the learned judge of the court below held, the sale under that decree could not divest that charge.

Appeal dismissed and decree affirmed, at the costs of the appellants.